# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

WARREN D. ANDERSON,

      Plaintiff,

      v.

DAUPHIN COUNTY ADULT
PROBATION OFFICE, et al.,

      Defendants.

CIVIL ACTION NO. 1:15-cv-00878

(KANE, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a *pro se* federal civil rights action. The plaintiff claims that the several defendants violated his civil rights in connection with an allegedly unlawful search of his home and his subsequent arrest on drug possession and other charges. The defendants have sorted themselves into separately represented groups and moved to dismiss the complaint for failure to state a claim, or for judgment on the pleadings. For the reasons expressed below, it is recommended that the motions be granted and the complaint be dismissed with respect to all defendants but one.

## I.  STATEMENT OF THE CASE

On May 6, 2015, the Court received and filed the *pro se* complaint, signed and dated by the plaintiff on April 27, 2015. (Doc. 1). At the time,

Anderson was incarcerated at SCI Camp Hill, located in Cumberland County, Pennsylvania.

In his complaint, Anderson has asserted Fourth Amendment unreasonable search and excessive force claims and an Eighth Amendment excessive force claim, all pursuant to 42 U.S.C. § 1983. He has also asserted supplemental state law claims for unreasonable search and seizure under the Pennsylvania state constitution and official oppression under a Pennsylvania criminal statute. Anderson seeks an award of compensatory and punitive damages from the defendants. He does not request declaratory or injunctive relief.

The complaint alleges that, on the afternoon of May 17, 2013, officers from the Dauphin County Adult Probation Office, the Dauphin County Sheriff's Department, and the Lower Paxton Police Department sought to execute an arrest warrant on an individual named Kevin Ramos, a white Hispanic male, whom they believed to reside at 2308 Orange Street in Harrisburg, Pennsylvania, the home where Anderson resided. Anderson alleges that Ramos did not live there, nor was he present at the time.

One of the officers knocked on the front door. A black male, later identified as Ronnie Daniels, opened the front door, saw the several police

officers outside, and attempted to close the door. The officers kicked in the front door and immediately detained Daniels in the home's living room, handcuffing him and directing him to sit on a couch while the officers searched for Ramos.

When officers searched upstairs, they found Anderson, also a black male, in the bathroom, where the officers later claimed to have found him flushing marijuana down the toilet. Anderson was handcuffed and taken downstairs, where he too was instructed to sit on the couch. One of the officers, probation officer Tom Walton, apparently believed that Anderson had something in his mouth and used a Taser to shock Anderson and force him to spit it out. The officers claimed to have recovered several small bags of drugs that had been secreted in Anderson's mouth.[1]

At this time, apparently having determined that Ramos was not in the house, officers asked for consent to continue their search of the home. Anderson consented to the search, though the allegations of his complaint suggest that he did so in fear of the further use of force. Based on the

---

[1] Notably, the complaint does not concede that Anderson did in fact have bags of drugs in his mouth, only that officers believed he had something in his mouth, that they used a Taser on him, and that they subsequently claimed to have recovered bags of drugs that he spit out when shocked with the Taser.

allegations of the complaint, it does not appear that officers found any additional evidence of a criminal nature. At some point—the complaint does not clearly state when—Anderson alleges that he was punched in the ribs by multiple officers.

The complaint specifically identifies the following defendants as having participated in the conduct described above: Dauphin County probation officer Tom Walton; Dauphin County probation officer Brandon Reigle; Dauphin County probation officer (first-name unknown) Brunell; Dauphin County deputy sheriff Sean Reed; Dauphin County deputy sheriff (first-name unknown) McMillian; and Lower Paxton Township police officer Dan Smeck. The complaint further names Harrisburg police officer Jon Fustine as a defendant. Fustine did not arrive on scene until after these events, but he prepared and filed the criminal complaint against Anderson, charging him with various drug-related offenses based on evidence recovered as a result of the conduct described above. The complaint also names the Dauphin County Adult Probation Office, the Dauphin County Sheriff's Department, and the Lower Paxton Township Police Departments as defendants, apparently on a *respondeat superior* basis.

- 4 -

The several defendants have sorted themselves into separately represented groups and entered their appearances. Each of the various groups of defendants has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or for judgment on the pleadings on the same basis, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 12; Doc. 26; Doc. 27; Doc. 45). The motions are fully briefed and ripe for disposition. (Doc. 13; Doc. 32; Doc. 28; Doc. 43; Doc. 46).

## II.   LEGAL STANDARDS

### A. Rule 12(b)(6) Dismissal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the

Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### B. Rule 12(c) Judgment on the Pleadings Standard

One set of defendants has answered the complaint and moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure on the ground that the plaintiff has failed to state a claim upon which relief can be granted. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A] motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 146–47 (3d Cir. 2013); *see also Nat'l Collegiate Athletic Ass'n v. Corbett*, 79 F. Supp. 3d 536, 541 ("The standard governing disposition of a defendant's Rule 12(c) motion for judgment on the pleadings is identical to the standard employed when evaluating a Rule 12(b)(6) motion to dismiss all or part of a complaint."). "[T]he difference between the two is procedural—a motion for judgment on the pleadings if filed after the pleadings are closed, and a motion to dismiss is filed in lieu of an answer." *Behar v. Pa. Dep't of*

*Transp.*, 791 F. Supp. 2d 383, 403 (M.D. Pa. 2011). Ultimately, "the complaint must contain sufficient factual matter, which if accepted as true, states a facially plausible claim for relief." *Caprio*, 709 F.3d at 147.

## III.   DISCUSSION

Anderson has brought this federal civil rights action under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for

the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, Anderson has asserted several claims arising out of the circumstances of his arrest on May 17, 2013. First, Anderson advances a Fourth Amendment unreasonable search claim, asserting that the defendants unlawfully entered his home, searched it, and detained and searched him. Second, Anderson advances an Eighth Amendment excessive force claim, based on defendant Walton's use of a Taser to force Anderson to spit out items secreted in his mouth, and based on the conduct of unspecified officers who punched Anderson in the ribs during the encounter. Third, the Court liberally construes Anderson's Eighth Amendment claim also as a Fourth Amendment excessive force claim. *See generally Graham v. Connor*, 490 U.S. 386, 394 (1989) (noting that an § 1983 excessive force claim may be brought under either the Fourth Amendment or the Eighth Amendment); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants). Fourth, Anderson asserts state law unreasonable search and seizure and official oppression claims.

Finally, Anderson seeks to hold the Dauphin County Adult Probation Office, the Dauphin County Sheriff's Office, and the Lower Paxton Township Police Department vicariously liable for the allegedly unconstitutional conduct of their subordinates.

## A. Supervisory and Municipal Liability Claims

The Court will begin with the last of these sets of claims. Anderson seeks to hold the Dauphin County Adult Probation Office, the Dauphin County Sheriff's Office, and the Lower Paxton Township Police Department liable for the allegedly unconstitutional conduct of their subordinates.

But "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made

with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### 1. *Dauphin County Sheriff's Office and Lower Paxton Township Police Department*

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. As a matter of law, the Dauphin County Sheriff's Office and the Lower Paxton Township Police Department are merely subunits of their respective municipalities, and not "persons" subject to suit under § 1983. *See Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 686 (M.D. Pa. 2008) (municipal police department); *Benard v. Washington County*, 465 F. Supp. 2d 461, 470 (W.D. Pa. 2006) (county sheriff's office). However, in light of Anderson's status as an incarcerated *pro se* plaintiff, the Court will liberally construe his claims against the Dauphin County sheriff's office and the Lower Paxton Township police department as having been asserted against Dauphin County and Lower

Paxton Township themselves, each of which is a municipality subject to liability as a "person" under § 1983. *See Monell*, 436 U.S. at 694; *Mullholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (county); *Postie v. Frederick*, 2015 WL 1219263, at *4 (M.D. Pa. Mar. 17, 2015) (township).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and

show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The complaint in this case does not identify any such policy or custom adopted or promulgated by Dauphin County or its sheriff's office, nor by Lower Paxton Township or its police department.

Accordingly, it is recommended that all claims against Dauphin County (or its sheriff's office) and Lower Paxton Township (or its police department) be dismissed for failure to state a claim.

### 2. Dauphin County Adult Probation Office

Similarly, the Dauphin County Adult Probation Office is not a "person" amenable to suit under § 1983. *See Rozell v. Susquehanna County Probation Dep't*, Civil Action No. 3:11-0914, 2012 WL 6859676, at *4 (M.D. Pa. July 2, 2012) (U.S. Magis. J. report), *adopted by* 2013 WL 152815 (M.D. Pa. Jan. 15, 2013); *Duffy v. County of Bucks*, 7 F. Supp. 2d 569, 579 (E.D. Pa. 1998) (same). Moreover, the probation office is not a municipal agency, but rather a part of the judiciary, which is an arm of the state. *See Haybarger v. Lawrence County Adult Probation & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); *Benedict v. Sw. Pa. Human Servs., Inc.*, 98 F. Supp. 3d 809, 814 (W.D. Pa. 2015); *Sapp v. Dauphin County Juvenile Probation*, No.

1:14-cv-1105, 2014 WL 6982655, at *6 (M.D. Pa. Dec. 10, 2014). As an arm of the state, rather than a municipality, the defendant probation office is not amenable to suit under a *Monell* municipal liability theory. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (holding that *Monell* does not apply to state agencies). Accordingly, it is recommended that all claims against the Dauphin County Adult Probation Office be dismissed for failure to state a claim.[2]

## B. Officer Fustine's Personal Involvement

As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207; *see also Millbrook*, 8 F. Supp. 3d at 613. Here, the complaint fails to allege any personal involvement whatsoever by Harrisburg police officer Jon Fustine. As the complaint expressly acknowledges, Fustine did not arrive on the scene until after the alleged wrongful conduct by the other defendants had

---

[2] The probation office has also asserted that, as an arm of the state, it is entitled to Eleventh Amendment immunity from suit. Because Anderson has failed to state a claim against the probation office, the Court need not reach the issue of Eleventh Amendment immunity. *See Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips County v. Beebe*, 578 F.3d 753, 763 n.14 (8th Cir. 2009); *Horsemen's Benevolent & Protective Ass'n, Inc. v. Pa. Horse Racing Comm'n*, 530 F. Supp. 1098, 1100 n.5 (E.D. Pa. 1982).

occurred. Fustine is alleged only to have prepared and signed a criminal complaint charging Anderson with drug-related offenses based on the evidence recovered by the other defendants. This alone is insufficient to state a facially plausible claim of personal involvement by this defendant in the alleged wrongful conduct. *See Dallas v. Goldberg*, 2000 WL 1092986, at *6–*7 (S.D.N.Y. Aug. 4, 2000) (finding no personal involvement by officer who arrived on scene after arrest and signed criminal complaint based on information provided by arresting officers). Accordingly, it is recommended that all claims against Jon Fustine be dismissed for failure to state a claim.

## C. Eighth Amendment Excessive Force Claim

Anderson asserts an Eighth Amendment excessive force claim based on the use of a Taser to shock him and force him to spit out several bags of drugs secreted in his mouth, and based on an unspecified number of punches to his ribs. But "[w]hile the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*,

463 U.S. 239, 244 (1983)). At the time of the alleged use of excessive force, Anderson was not a convicted prisoner but an individual detained for the security of law enforcement officers as they secured Anderson's house and executed an arrest warrant for another individual, facing potential arrest himself but not yet charged with any criminal offense. Accordingly, it is recommended that Anderson's Eighth Amendment cruel-and-unusual-punishment claim be dismissed for failure to state a claim.

## D. State Law Search and Official Oppression Claims

Anderson has asserted state law claims based on Article I, Section 8 of the Pennsylvania Constitution, which prohibits unreasonable searches and seizures, and 18 Pa. Cons. Stat. § 5301, which imposes criminal misdemeanor penalties for official oppression. But there is no private cause of action for damages under the Pennsylvania Constitution. *See Jones v. City of Philadelphia*, 890 A.2d 1188, 1208–16 (Pa. Commw. Ct. 2006) (considering claim for damages under this same provision), *appeal denied*, 909 A.2d 1291 (Pa. 2006) (mem. table decision); *see also Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 716–17 (E.D. Pa. 2007) (same) (citing *Jones*, 890 A.2d at 1216); *see also Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 Fed. App'x 681, 687 (3d Cir. 2011)

("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.") (citing *Jones*, 890 A.2d at 1208). Similarly, there is no private cause of action for damages under the official oppression statute, 18 Pa. Cons. Stat. § 5301. *D'Errico v. DeFazio*, 763 A.2d 424, 429–30 (Pa. Super. Ct. 2000) (declining to find an implied private right of action in § 5301), *appeal denied*, 782 A.2d 546 (Pa. 2001) (mem. table decision); *see also Mathias v. Kershaw*, Civil Action No. 1:09-CV-1515, 2010 WL 1329067, at *4 (M.D. Pa. Mar. 29, 2010) ("Despite being a part of the Pennsylvania criminal code, . . . § 5301 does not provide a private cause of action for citizens allegedly victim to the violating conduct."); *see also Agresta v. Goode*, 797 F. Supp. 399, 409 (E.D. Pa. 1992) (declining to find an implied private right of action in § 5301). Accordingly, it is recommended that Anderson's state law claims under Article I, Section 8 of the Pennsylvania Constitution and under the official oppression criminal statute, 18 Pa. Cons. Stat. § 5301, be dismissed for failure to state a claim.

### E. Fourth Amendment Unreasonable Search Claim

Anderson has asserted a Fourth Amendment unreasonable search

claim, alleging that the defendants illegally entered into his home and searched it without a valid search warrant. But this claim is not cognizable under § 1983 under the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that, where judgment in favor of a plaintiff in a § 1983 action for damages would necessarily imply the invalidity of the plaintiff's conviction or sentence, the plaintiff must first demonstrate "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Id.* at 486–87. In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reaffirmed this rule and broadened it to encompass equitable remedies as well, holding that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter what the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of

confinement or its duration." *Id.* at 81–82.

"*Heck* typically does not bar actions for Fourth Amendment violations." *Sanders v. Downs*, 420 Fed. App'x 175, 179 (3d Cir. 2011) (per curiam). "Because of doctrines like independent source and inevitable discovery, and especially harmless error, . . . a § 1983 action [alleging an unreasonable search], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7 (discussing an unreasonable search claim). But, in determining whether success on a claim would necessarily impugn the integrity of the plaintiff's underlying conviction, the Third Circuit requires that a district court undertake a fact-based inquiry into whether a Fourth Amendment claim implies the invalidity of the underlying conviction. *See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 448 (3d Cir. 2005), *abrogated on other grounds*, *Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010). This "fact-based approach requires a district court to inquire into the nature of the criminal conviction and the antecedent proceedings." *Id.* at 451.

> In situations where the evidence seized as a result of an unlawful search or arrest was used to convict the defendant, district courts examine the factual circumstances to determine whether doctrines such as

> independent source, inevitable discovery, or harmless
> error would have permitted the introduction of the
> evidence. Where it is impossible or improbable that such
> doctrines would have permitted the introduction of the
> evidence at issue in the criminal proceedings,

the *Heck* favorable-termination rule applies. *Id.* at 448–49.

Here, following a bench trial, Anderson was convicted by the Dauphin County Court of Common Pleas of possession with intent to deliver a controlled substance and other related drug offenses.[3] He was

---

[3] In addition to the complaint, the Court has considered publicly available state court docket records of the plaintiff's criminal proceedings. *See Commonwealth v. Frantz*, Docket No. CP-22-CR-0003367-2013 (Dauphin County C.C.P.), *appeal filed*, No. 372 MDA 2015 (Pa. Super. Ct.), *available at* https://ujsportal.pacourts.us/DocketSheets/CP.aspx. The various groups of defendants have also submitted copies of the state trial court's order denying the plaintiff's motion to suppress evidence and its judicial opinion supporting the plaintiff's conviction and sentence on appeal. (Doc. 28-4 (order of October 9, 2014, summarily denying motion to suppress); Doc. 45-2, at 30 (same); Doc. 46-2, at 30 (same); Doc. 28-5 (Rule 1925(a) opinion of June 29, 2015); Doc. 32-6 (same); Doc. 37-1 (same); Doc. 45-2, at 32–36 (same); Doc. 46-2, at 32–36 (same)). These state court materials are public records of which this Court may properly take judicial notice in ruling on a motion to dismiss. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, [a court] may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."). The defendants have also presented copies of legal briefs filed by counsel in the state criminal proceedings, transcripts of the state
*(continued on next page)*

sentenced to serve an aggregate term of 6 to 24 months in prison and to pay fines and costs. Anderson has appealed his conviction and sentence to the Superior Court of Pennsylvania. That appeal remains pending.

Based on the allegations of the complaint and the factual findings recounted in the sentencing court's memorandum opinion, it is clear that Anderson's conviction was based solely on evidence recovered as a result of an allegedly unlawful search of his home. The state sentencing court explicitly considered Anderson's unreasonable search claim in adjudicating his motion to suppress, articulating its finding that the officers' entry into and search of Anderson's home was lawful. But for the search of Anderson's home, the drugs underlying his drug conviction would not have been seized. *See Crawford v. Frimel*, 337 Fed. App'x 211, 213 (3d Cir. 2009) (per curiam). Since the drugs found during the allegedly illegal search are the only link between Anderson and the drug offenses for which he was convicted, his Fourth Amendment unreasonable search claim is barred by *Heck*, as a finding by this Court that the search was unlawful would

---

court proceedings, a copy of the arrest warrant for Kevin Ramos, and other matter outside the pleadings. All such material is excluded by the Court and has not been considered in this recommended disposition of the instant motions for dismissal or for judgment on the pleadings. *See generally* Fed. R. Civ. P. 12(d).

necessarily imply the invalidity of his state criminal conviction. *See id.* at 213–14; *see also Ellington v. Cortes*, 532 Fed. App'x 53, 56–57 (3d Cir. 2013) (per curiam); *James v. York County Police Dep't*, 160 Fed. App'x 126, 133–34 (3d Cir. 2005) (per curiam); *Williams v. Healy*, Civil Action No. 08-2389, 2015 WL 2185577, at *3–*4 (D.N.J. May 8, 2015).

Accordingly, it is recommended that Anderson's Fourth Amendment unreasonable search claim be dismissed for failure to state a claim.

## F. Fourth Amendment Excessive Force Claim

Anderson has asserted a Fourth Amendment excessive force claim, alleging that defendant Walton applied excessive force in using a Taser to shock Anderson, who was handcuffed at the time, to force him to spit out bags of drugs that had been secreted in his mouth.

Unlike Anderson's Fourth Amendment unreasonable search claim, his excessive force claim is not *Heck*-barred. At the time of this alleged use of excessive force, Anderson had been handcuffed and subdued. The state court explicitly considered Anderson's excessive force claim in adjudicating his motion to suppress, finding that, following the officers' lawful entry into and search of the home, Anderson was lawfully detained. Notwithstanding Anderson's claim that the drug evidence recovered from

his mouth was obtained through the use of excessive force, the state court found that, because he was lawfully in custody, the bags of drugs in his mouth "would have inevitably been discovered." (*E.g.*, Doc. 28-5, at 6). In light of the nature of this ruling by the state court, it appears that a favorable ruling on Anderson's excessive force claim would not necessarily imply the invalidity of his conviction. *See Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997) (finding that *Heck* did not bar an excessive force claim); *Rosembert v. Borough of East Lansdown*, 14 F. Supp. 3d 631, 640 (E.D. Pa. 2014) (same).

"The use of a Taser on a suspect who is no longer resisting arrest has been found to be unconstitutional." *Geist v. Ammary*, 40 F. Supp. 3d 467, 481 n.45 (E.D. Pa. 2014) (collecting cases); *see also Yarnall v. Mendez*, 509 F. Supp. 2d 421, 432 (D. Del. 2007) ("At least one appellate court has held that 'the gratuitous use of [a Taser] on a suspect who has already been subdued and placed in handcuffs is unconstitutional.'") (quoting *Bultema v. Benzie County*, 146 Fed. App'x 28, 35 (6th Cir. 2005)). The defendants note that there are cases finding that "the use of a Taser by law enforcement is not *ipso facto* excessive force." (Doc. 32, at 25). But the cases cited by the defendants in support of this proposition are summary

judgment decisions involving evidence that the plaintiff was resisting arrest at the time of the Taser's use. *See generally Woods v. Grant*, 665 F. Supp. 2d 438 (D. Del. 2009); *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816 (M.D. Pa. May 19, 2006).[4] At this, the dismissal stage, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, it cannot be said that Anderson's excessive force claim against Walton lacks facial plausibility. *See generally Warren Gen. Hosp.*, 643 F.3d at 84.

The excessive force claim, however, must be dismissed with respect to all defendants *other* than Walton, as none is alleged to have any personal involvement in this allegedly unreasonable application of force. *See Rode*, 845 F.2d at 1207; *see also Millbrook*, 8 F. Supp. 3d at 613.

Walton has asserted that this Court should abstain from adjudicating Anderson's Fourth Amendment claims under *Younger v.*

---

[4] The defendants also cite a Mississippi state court opinion affirming a criminal conviction based upon similar drug evidence secreted in a criminal defendant's mouth, which was recovered by the use of a Taser to force the defendant to spit it out. *See Ellis v. State*, 21 So. 3d 669 (Miss. Ct. App. 2009). But the standard of review involved in considering that criminal evidence ruling on appeal (a "shocks the conscience" standard) is decidedly different than the standards involved in determining whether this plaintiff's complaint has stated a colorable excessive force claim.

*Harris*, 401 U.S. 37 (1971). Although *Younger* might apply to Anderson's unreasonable search claim if it were not *Heck*-barred, Anderson's excessive force claim has no bearing on his state criminal proceedings, as he has not been charged with resisting arrest or any related offense. *See Rivas v. Cal. Franchise Tax Bd.*, 619 F. Supp. 2d 994, 1006 (E.D. Cal. 2008).

Walton has asserted that he is entitled to qualified immunity, arguing that it would not be clear to a reasonable officer that the use of a Taser to force Anderson to disgorge drugs secreted in his mouth was unlawful in light of clearly established law at the time of Anderson's arrest.[5] Walton notes that existing case law has approved the use of Tasers to "subdue individuals who resist arrest or refuse to comply with police orders" even after being handcuffed. (Doc. 32, at 32 (citing *Brown v. Cwynar*, 484 Fed. App'x 676, 681 (3d Cir. 2012)). But the complaint does not allege that Anderson resisted arrest or refused to comply with police orders,[6] but merely that officers subjectively believed Anderson had

---

[5] Walton also argues that his conduct did not violate a constitutional right of Anderson's, but as noted above, at this stage, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, Anderson has pleaded a facially plausible Fourth Amendment excessive force claim against Walton.

[6] The state trial court's judicial opinion, which has been judicially
*(continued on next page)*

something in his mouth (Doc. 1, at 5), that Walton "deployed the taser on him" (*id*.), that "Anderson was tased by probation officer Tom Walton multiple times [and] he turned the volume up high to cause more damage" (*id*. at 6), and that Anderson was handcuffed at the time (*id*. at 5, 7).

As the Third Circuit has cautioned, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam). This is one those cases. Taking the allegations of the complaint as true, viewing them in the light most favorable to the plaintiff, the complaint alleges that Walton used a Taser on Anderson multiple times without provocation or warning while he was already handcuffed and subdued. Under these circumstances, dismissal on qualified immunity grounds at this time is inappropriate. *See Garey v. Borough of Quakertown*, Civil Action No. 12-799, 2012 WL 3562450, at *4 (E.D. Pa. Aug. 20, 2012) (denying motion to dismiss on qualified immunity grounds where complaint alleged use of

---

noticed by this Court, does include a finding that Anderson refused to comply with an unidentified probation officer's request that he spit out whatever was hidden in his mouth, but facts recited in that court's opinion are not properly before this Court at this, the dismissal stage. *See Wah Kwong*, 181 F.3d at 426.

Taser without provocation on plaintiff who had already been handcuffed and was inside a police vehicle); *Gorman v. Warwick Twp.*, Civil Action No. 10-CV-6760, 2011 WL 1235198, at *9 (E.D. Pa. Apr. 1, 2011)  (denying motion to dismiss on qualified immunity grounds where complaint alleged use of Taser multiple times on handcuffed and compliant plaintiff); *see also Correa v. Simone*, 528 Fed. App'x 531, 535 (6th Cir. 2013) ("[A] plaintiffs' right to be free from a taser shock is clearly established where they have done nothing to resist arrest or are already detained."); *Shultz v. Carlisle Police Dep't*, 706 F. Supp. 2d 613, 624 (M.D. Pa. 2010) (denying summary judgment on qualified immunity grounds where officers "repeatedly tas[ed] a subject who had already been subdued and did not pose any threat"). The defendants are free to raise this qualified immunity defense again at summary judgment or at trial, if supported by the evidence. *See Garey*, 2012 WL 3562450, at *4.

Accordingly, it is recommended that Anderson's Fourth Amendment excessive force claim be dismissed for failure to state a claim with respect to all of the defendants except probation officer Tom Walton, that Walton's motion to dismiss be denied in part, and that Anderson's Fourth Amendment excessive force claim be permitted to proceed against Walton.

### G. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, it is clear that amendment would be futile with respect to all § 1983 claims against the Dauphin County Adult Probation Office, which is an arm of the state and thus not amenable to suit under § 1983, as well as with respect to the plaintiff's Eighth Amendment and state law claims. It is not clear, however, that amendment would be futile with respect to the remainder of the plaintiff's claims, nor is there any basis to believe it would be inequitable. It is therefore recommended that Anderson be granted leave to file an amended complaint within a specified time period following dismissal of the complaint.

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.     The motion to dismiss by the Dauphin County Adult Probation Office (Doc. 12) be **GRANTED** and all claims against the Dauphin County Adult Probation Office be **DISMISSED WITH PREJUDICE** for failure to

state a claim under Fed. R. Civ. P. 12(b)(6);

    2.    The motion to dismiss by police officer Jon Fustine (Doc. 27) be **GRANTED** and all claims against Fustine be **DISMISSED** for failure to state a claim under Fed. R. Civ. P. 12(b)(6);

    3.    The motion for judgment on the pleadings by police officer Dan Smeck and the Lower Paxton Police Department (Doc. 45) be **GRANTED** and all claims against Smeck and the Lower Paxton Police Department be **DISMISSED** for failure to state a claim under Fed. R. Civ. P. 12(c);

    4.    The motion to dismiss by the Dauphin County Sheriff's Department, deputy sheriff Sean Reed, deputy sheriff McMillian, probation officer Brandon Reigle, probation officer Tom Walton, and probation officer Burnell (Doc. 26) be **GRANTED in part and DENIED in part**, and:

    a.    all claims against the Dauphin County Sheriff's Department, Reed, McMillian, Reigle, and Burnell be **DISMISSED** for failure to state a claim under Fed. R. Civ. P. 12(b)(6);

    b.    the plaintiff's Eighth Amendment excessive force, Fourth Amendment unreasonable search, and state law claims against Walton be **DISMISSED** for failure to state a claim under Fed. R. Civ. P. 12(b)(6); and

      c.      the plaintiff's Fourth Amendment excessive force claim against Walton be permitted to proceed;

      5.      The plaintiff be granted leave to file an amended complaint within a specified period of time following partial dismissal of the original complaint; and

      6.      The matter be remanded to the undersigned for further proceedings.

Dated: January 25, 2016        ***s/ Joseph F. Saporito, Jr*.**
                                       **JOSEPH F. SAPORITO, JR.**
                                       **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

WARREN D. ANDERSON,

     Plaintiff,

     v.

DAUPHIN COUNTY ADULT
PROBATION OFFICE, et al.,

     Defendants.

CIVIL ACTION NO. 1:15-cv-00878

(KANE, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated January 25, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: January 25, 2016            *s/ Joseph F. Saporito,  Jr*.
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge